Good morning. Good morning. My name is William Weldo, and I represent the plaintiffs and the appellants. And I would like to reserve five minutes for rebuttal time. All right. Thank you. The result achieved as a result of the trial in this case was truly extraordinary by any standard that's ever been articulated for the recovery of PAGA penalties in California. As a result of the trial, the court awarded PAGA penalties of $500,000. Seventy-five percent of those PAGA penalties were sent to the State of California, and 25 percent were distributed to members of the class. The pretrial settlement offer, in fact, the only pretrial settlement offer that was made by the defendants, occurred about 60 days before the trial, and it was $40,000. From the outset of the litigation, the defendants played hardball with the plaintiffs and put obstacles in their way every step of the way. When we asked them to stipulate to something that should have been obvious, like the numerosity in the class, they said no. They now say, well, you should have known there was numerosity. A prerequisite to filing a motion was a meet and confer. I met and conferred. I asked to stipulate to numerosity. I pointed out the fact that they had essentially stipulated to it in their removal papers, and they said, go prove it. I looked at the earnings statements. They were defective. I said, why don't we stipulate to the contents of your earnings statements? I was told, no, go to Boston and take PMK depositions, which I did. I sought to resolve the case through mediation, never got a settlement offer. Let me ask you a question. You went to Boston to take depositions for what purpose? Just the improper wage statements or also off-the-clock claims? The Boston depositions, Your Honor, focused exclusively on the wage statements, exclusively on the wage statements. Two days of them with two separate witnesses. It was not a situation where I didn't try to resolve it. Again, we had an all-day mediation with a retired federal judge, Judge Trevisian. I got no offer on the APAGA penalty claims. After the court certified the class, I attempted to settle the case and got a pretrial offer, as I said, of $40,000, but even that was problematic because while the class members would have gotten about $10, the defendants offered up to $1,000 or more for the class representatives, which I don't think would have been ethical for me to take. The trial was not lengthy. It lasted a day. The result of the trial, again, was $500,000 in pocket penalties sent to the State of California. The court gave 14 days after the entry of that order to file an attorney's fees motion. The attorney's fees motion that was required is not the kind of thing that my firm or any other law firm in California has on a word processor. There was a very short period of time in which to write that motion. I wrote it myself. I have more than 35 years of experience. My expertise is employment and in labor law. It always has been. I was brutally efficient. It took me 43 hours to do it. You can look at the motion and you can judge for yourselves how much work was in it. Counsel, Judge Gould, if I could ask you a question. Could you focus a bit in your argument on the requirements of moralities or other precedents and why the district court's explanations were not sufficient, both in reduction of hours and in reduction of rate claims? Yes, Your Honor. With regard to the reduction of the rates sought, which were sought from between a low of $250 to $300 an hour to up to $700 an hour, the court gave it one liner and said this is not a complicated case that required particularly specialized expertise. That was it. There was no other explanation at all about how the court arrived at a $250 an hour billing rate for all attorneys working on the case. And that is not something that is countenanced either by Moreno or by the more recent Ninth Circuit authority. The problem also with the hourly rate is that it was pulled from thin air. With regard to establishing the hourly rate, the defendants put before the court three lengthy declarations of experienced plaintiff's counsel to establish what the market rate is for the legal services. But, counsel, you wouldn't disagree, would you, that the district court is entitled to rely upon its experience to establish what the market rate is for the legal services? I mean, the district court is entitled to rely upon its experience in seeing attorney fee claims that have come before the district court previously. There is certainly authority for that, Your Honor, but under Moreno, when you are making drastic, drastic cuts to attorney's fees awards, and the more drastic the cuts, the greater the explanation you need to make about why you are making them. What hourly rates are you specifically challenging from the district court? Well, I challenge the district court's blended rate of $250 for all attorneys. What rate were you requesting for yourself? $700 per hour, Your Honor. And I can give you the background for that rate also, because... But you're not arguing that the district court abused its discretion in saying that $700 an hour was not appropriate for this case, are you? I am saying that, Your Honor, and I'm saying it for two reasons. Reason number one is that there is no explanation in the court's decision as required by Moreno and its progeny for that drastic of a rate reduction. And the second reason is that the only evidence before the district court supported a much higher rate. That's not a rate that was pulled out of the blue or which is unreasonable for attorneys with my background experience and qualifications. Well, the district court was looking at a rate for a case of this type, not necessarily a rate for a different type of case. Do you think that's fair, appropriate, or within the district court's discretion to consider the type of case that's being considered? And maybe $700 an hour may be appropriate for a complex employment law case, and thought that perhaps $700 an hour is not appropriate for a wage claim where what you're doing is looking at the hourly rates that were paid and seeing whether or not those were appropriate. Would that be something within the district court's purview to consider? Not what the district court did here. If, in fact, Your Honor, all that was involved here was looking at a pay stub and saying, well, it doesn't have the name and address of the legal entity employer here, there is no ending date, no beginning date of the pay period, and it doesn't have an employee ID number, that doesn't require brain surgery. Okay? But there was much more than that involved here, and the defendants knew it from the start. They raised six issues of first impression, very complex legal issues, in an attempt to look to forestall any recovery at all. And the district court's finding with regard to the rates was, and I'm quoting, this is not a complicated case that required particularly specialized expertise, close quote. If the court is going to make that conclusion under Moreno and his progeny, I respectfully submit that the district court is required to give reasons for that conclusion because there is no factual basis for that conclusion. The defendants in the trial court in this case that did not require, that was not complicated and did not require particularly specialized expertise, hired to defend them one of the most expert wage-hour lawyers in California. When they lost in the district court, they hired Kirby Wilcox, my former law partner, Mr. Cain's current law partner, who is the acknowledged wage-hour expert in California, if not in America, to represent them in this case that was not a complicated case that did not require particularly specialized expertise. It did. And... What about the lawyer fees that were submitted on your application? They ranged from, let's say, $300 to $700? Yes. And the court assessed or evaluated but didn't really give a reason for why he made the amount $250 per hour except for the one-liner or whatever that you said. That's exactly what happened, Your Honor. And, in fact, the only evidence in the record supported the higher rates. There was no contrary evidence. None. So counsel... What cases other than Morales? I know Morales has a statement about having a clear statement of reasons, but what other cases do you rely on? I cite two additional cases in a letter to the court dated August 9, 2013. One of them is Barnard v. Theobald. The second one is Padgett v. Loventhal. A third case I cited was Costa v. Commissioner of Social Security, which is out of the district court in Oregon, where in a Social Security appeal, the district court cut the plaintiff's, the successful plaintiff's lawyer's fee request by one-third without giving a reason. And the Ninth Circuit not only reversed the district court but ordered the district court to award the plaintiff the full amount of requested attorney's fees. So those are three cases right there, Your Honor, in addition to Moreno. Counsel, you're down to three minutes and 47 seconds. Thank you so much. I will reserve the rest of my time to rebuttal. All right. Thank you, counsel. May it please the Court. The Supreme Court in Fox v. Vice said that district judges should not become green-eye shade accountants in setting attorney's fees. And Judge Klausner followed exactly the correct procedure in setting the fee here. First, he made a factual finding that the pay stub claim at issue here, it's not a wage hour case, it's a pay stub claim, that particular claim was worth no more than 210 hours of attorney time. And second, he made a factual finding that a reasonable hourly rate. Did the judge explain how he got that number? He sure did. He made a factual finding that a reasonable hourly rate for this kind of claim was 250. Could you point us to the record where the judge explained his reduction in hours and the explanation for that? Yes. It's at excerpts of record page 21. He explained his reasoning. He said the claim the plaintiffs prevail on wasn't rocket science. He described the case as, quote, relatively simple and, quote, fairly easy, one that, quote, did not present a complicated issue that required specialized expertise. He further explained you simply compare the pay stubs that existed with the Labor Code's requirements. For example, does the pay stub list the last four digits of the employee's Social Security number? It either does or it doesn't. If it doesn't, then you multiply the offending pay stubs by the statutory penalty rate. The Court said the case was not complex, and it, drawing on its experience, estimated the proper recoverable hours at 210. But the difficulty I have with that is I don't know how he came up with that number as opposed to the number. I don't see the work. When I was a district court judge and I sat on attorney fee applications, I went through the applications line by line. And so when it came to the court of appeals, the court could tell what I gave credit for, what I didn't give credit for. We don't have that here. We don't know what the district court discounted, what it credited, how many hours it thought should have been included, how many not. Usually if it's like a 10% reduction, we give the district court judge the benefit of the doubt. But this was much more without any definitive explanation as to how the judge came to that number of hours. That's a little troubling to me. Well, you have to remember this case involved case number one, what it started out to be, and case number two, what it turned out to be. Case number one, what it started out to be, was a complicated wage-hour case. It involved allegations of off-the-clock work. It involved allegations of miscomputation of the regular rate of pay. All that fell by the wayside. Plaintiffs essentially conceded. They settled that piece of the case for $5,000, all parties to bear their own costs and attorney's fees. And Judge Klausner correctly recognized that. The Boston trip, for example, that was being discussed here was discovery in case number one. It almost entirely dealt with the part of the case that fell by the wayside. What does that have to do with the, go ahead. You're saying that the judge excluded that? What Judge Klausner did is say, okay, focusing on the part that plaintiffs actually prevailed on, which is case number two, the pay stub claims only, what was a reasonable amount of time to litigate just that piece of the case from start to finish? And he made a judgment based, drawing on his experience, his knowledge of the law, that 210 hours was the correct amount. He might have thought it was 150 or should have been 180. But he has discretion to draw on his own experience. As this court said in Perez v. I'd like to just, I share what I think is a concern that Judge Rawlinson stated. He may be right that 210 is the right number. But I didn't see where he really gave an adequate explanation of how he gets from start to finish. From 746 to 210 in sufficient terms that an appellate court could review that and make an assessment. And from my perspective, the same is true on going from rates logged or submitted at $300 to $700 an hour to 250. So I know that he thinks it wasn't rocket science and that the part of the case that survived didn't require, you know, the top lawyer rates. But I didn't really understand the rationale of the line of reasoning that gets to the specific number he got to in a way that we could review that. Well, my answer to that is it certainly is true he did not go line by line and cross out this and cross out that. But that I think is what trial judges do. They take, as this Court said in Perez v. Safety Clean, they take their overall sense of the suit. They may use estimates. And the appellate courts give substantial deference to what the district judge does in those circumstances. That's true if it's a haircut, but not if it's a scalping. No, I disagree, Your Honor. If there is a 10 percent haircut, the judge can enter a one-line order saying I cut the fees 10 percent. And under Moreno, that order would be affirmed. But if the judge wants to go beyond that, the judge needs to can still draw on his own expertise. But has to explain it. There is absolutely nothing wrong with the judge drawing on his expertise, but he has to tell us, you know, I've had 30 of these cases before me, the lawyers charged, you know, $200 an hour, $300 an hour, and this is an outlier. Something that gives us some certainty that we understand the rationale for the court's decision. Well, when you were making an approximation, when a district judge is confronted with what Judge Klausner was confronted with here, which is an hourly rate for complex litigation and hours that conflate case number one and case number two, the judge is entitled to make the approximations, which he did. Attorney fee applications are not the most pleasant part of being a district court judge, I grant that. And it's very tedious to go through those applications and sort out what the district court judge thinks should be awarded fees for and what shouldn't, but it's really difficult for us on appeal to know whether or not the district court abuses discretion if we can't understand the reasoning. If the judge just gives us an estimate with little to no explanation as to how that estimate was arrived at, our hands are sort of tied. Well, I think I've given you my best answer to that, Your Honor. I think that he did state what his reasons were in attempting to parse through the proffer, which was focused on a case that was essentially litigated and lost. Was there evidence in the record of like a $250 rate for wage statement cases, like where this ended up? No, there was no evidence in the record because it's a very new area of law and there is no precedent in these cases. And Judge Klausner said there's no precedent, but the fact that there's no precedent doesn't mean that the case isn't straightforward and uncomplicated. Well, there's analogies, aren't there? Isn't there an analogy or similar analogies to this kind of case? It doesn't have to be this particular thing, but you explain, well, you're going to look through a lot of documents. You're going to have 100,000 wage statements and someone has to go through it. Arguably, well, a paralegal can go through that, not somebody at $700 an hour. We're not saying that's not right. We're just saying we don't know. I hope you get the sense of that. I don't think anybody is suggesting that we agree or disagree with the number. It's the analysis that's lacking. And my review of the record indicates that you and your firm did a fairly good job of pointing out why it should be a lower number than submitted by the plaintiff, but we don't see that in the order. Well, in light of the Court's comments, let me then turn to what Mr. Waldo said the proper remedy should be. He asked this Court simply to reinstate what he originally asked for or, in the alternative, cut it 10 percent. And that simply isn't the law. If, as this Court's question suggests — I'll give him an opportunity to elaborate on his reasoning. The case that counsel cited for the proposition that the fee award should simply be affirmed was this Court's decision in Costa v. Commissioner. Not the fee award should be affirmed, but that the fee should be granted. Correct. I misspoke. It's Costa v. Commissioner. That was a case where the dispute was over — the request was a $10,000 fee. What was granted was a $7,000 fee. And this Court simply said, give him the $10,000. There's no case other than that one case that involved just a $3,000 difference in view where this Court ordered the fee petition to be granted as a remedy where, in the Court's view, the district judge didn't adequately show his or her work. Unless the Court has questions, I'm prepared to submit. I have no questions. Thank you, counsel. Rebuttal. Thank you. Mr. Payne was not involved in the trial of this matter. He is a very able appellate counsel. And unfortunately, he made a misrepresentation to the Court about the — what went on in Boston. The principal witness deposed in Boston, and they produced two PMP witnesses, 36 witnesses, was a person named David Gross, who was the director of disbursements. Mr. Gross was the only recipient witness called by the defendants at the trial. The only issue at the trial was the pay stub issue. Well, that's something that the district court would be interested in in terms of making the initial determination as to whether or not that was something that was pertinent to the claims that were prevailed upon or whether it was pertinent to the claims that were not successful. So I can't speak for the other members of the panel, but that doesn't help me in terms of resolving the issue that's here on appeal. I think you should focus on what do we do now. Do we send it back with instructions and some kind of guidelines? Or should we take your suggestion that we should just now give you some — Well, for obvious reasons, I think you should take my suggestion. Is that consistent? Go ahead. The panel doesn't. I'm just speaking as one judge. But I don't feel I see a record here where I could say we should award the fees that were applied. Instead, it seems to me that the correct approach is to vacate the appeals and remand for a redetermination of fees with a better explanation of the judge's reasoning in light of whatever precedents we think are pertinent. And you know, you've mentioned a few. The defendants have mentioned some in their briefs, and I think I might be aware of another case pending where the court's going to be talking about this. But what would be wrong with that? Then you can argue whatever you want to the judge again, and so can the defense counsel. And the judge can make a decision expressed in language that we can review. I don't think that's necessary here, Judge Gould, and I wanted to answer one of your questions, which was you asked Mr. King, was there evidence in the record for a $250 rate for these kinds of cases? And the answer to that is there's not evidence in the record for a $250 rate for these kinds of cases or any other type of case. And you'll have an opportunity, I guess. I'm pretty sure I'm right on this one. You'll have an opportunity to make that argument down below. All right. Thank you so much.
judges: Huck, Gould, Rawlinson